UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-CV-60167-LEIBOWITZ/AUGUSTIN-BIRCH

**SEYCHELL OLASCOAGA,**

    Plaintiff,

v.

**T-SHIRT STATION STORES, LLC,**

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT**

This cause comes before the Court on Plaintiff Seychell Olascoaga's Motion for Default Final Judgment. DE 44. The Honorable David S. Leibowitz, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge for a report and recommendation. DE 45. Defendant T-Shirt Station Stores, LLC did not file a response, and the time to do so has expired. After reviewing Plaintiff's Motion and the accompanying affidavit, this Court determined that supplemental briefing was necessary, DE 47, and Plaintiff submitted supplemental briefing. DE 48. Having carefully considered the record and the briefing and being otherwise fully advised in the premises, the Court **RECOMMENDS GRANTING** Plaintiff's Motion for Default Final Judgment [DE 44].

**I. Background**

Plaintiff began working for Defendants T-Shirt Station and Mostafa Hussein on November 15, 2022. DE 11 ¶ 8. On January 12, 2023, Defendant Hussein, the owner of Defendant T-Shirt Station and Plaintiff's supervisor, approached Plaintiff and asked her if she was pregnant, claiming that, if she was, it was a "big deal." *Id.* ¶¶ 9–10. Without giving Plaintiff an opportunity to respond,

Defendant Hussein "[i]mmediately" told her, "Look to save your time and mine; this is your last day. You are no longer working for my company." *Id.* ¶ 11. Defendant Hussein thereafter terminated Plaintiff's employment, and Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). *Id.* ¶¶ 12–13. Within ninety days of receiving a right-to-sue notice from the EEOC and FCHR, Plaintiff filed her Complaint against Defendants T-Shirt Station and Hussein. *Id.* ¶ 14. Plaintiff later amended her Complaint. DE 11.

In her First Amended Complaint, Plaintiff raises six counts: (1) a pregnancy discrimination count under the Pregnancy Discrimination Act ("PDA") and Title VII, (2) a pregnancy discrimination count under the Florida Civil Rights Act ("FCRA"), (3) a Fair Labor Standards Act ("FLSA") count for unpaid wages against Defendant T-Shirt Station, (4) a FLSA count for unpaid wages against Defendant Hussein, (5) a FLSA retaliation count against both Defendants, and (6) a Florida Minimum Wage Act ("FMWA") count against both Defendants. *Id.* at 3–11. Despite being served, DE 16-4, Defendant T-Shirt Station did not respond to Plaintiff's First Amended Complaint. Plaintiff dismissed the First Amended Complaint without prejudice as to Defendant Hussein, DE 27; *see also* DE 29, and subsequently moved for, and obtained, a clerk's entry of default as to Defendant T-Shirt Station. DE 41; DE 42. Afterwards, Plaintiff filed the present Motion for Default Final Judgment against Defendant T-Shirt Station. DE 44.

## II. Liability

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015). "While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* at 1245 (alteration and quotation marks omitted). "Entry of default judgment is only warranted when there is a

sufficient basis in the pleadings for the judgment entered." *Id.* (quotation marks omitted). That is to say, a complaint must be able to survive a motion to dismiss for failure to state a claim in order for the plaintiff to obtain a default judgment. *Id.* ("[W]e have subsequently interpreted the [sufficient basis] standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim."); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").

As explained above, Plaintiff raises five counts against Defendant T-Shirt Station: (1) a pregnancy discrimination count under the PDA and Title VII, [1] (2) a pregnancy discrimination count under the FCRA, (3) a FLSA count for unpaid wages, (4) a FLSA retaliation count, and (5) a FMWA count. DE 11 at 3–11. The Court will analyze the sufficiency of these counts in turn.[2]

### A. Pregnancy Discrimination under the PDA and Title VII

To establish a prima facie case of pregnancy discrimination, Plaintiff must demonstrate that: "(1) she is a member of a group protected by Title VII; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she suffered from a differential application of work or disciplinary rules." *Hubbard v. Meritage Homes of Fla., Inc.*, 520 F. App'x 859, 863 (11th Cir. 2013); *see also Williams v. Crown Liquors of Broward, Inc.*, 851 F. Supp. 2d 1332, 1338 (S.D. Fla. 2012) ("The elements a plaintiff must show to establish the *prima facie* case of pregnancy discrimination are that: (1) she was pregnant (a member of a protected class) and her employer knew that she was pregnant; (2) she was performing her duties satisfactorily; (3) she was

---

[1] Plaintiff does not specifically name Defendant T-Shirt Station for her pregnancy discrimination claims. Instead, she merely asserts that an unspecified "Defendant" discriminated against her. *See, e.g.*, DE 11 ¶ 25 ("By the conduct described above, Defendant engaged in unlawful employment practices and discrimination against Plaintiff . . . ."). Nonetheless, this does not render her First Amended Complaint deficient. *Cf. Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").

[2] The Court does not discuss Plaintiff's FLSA retaliation count because her Motion for Default Final Judgment does not request default judgment on that count. *See* DE 44. As explained at the end of this report and recommendation, the Court recommends dismissing Plaintiff's FLSA retaliation count for failure to prosecute.

discharged; and (4) similarly situated employees not in the protected class were treated more favorably."). However, to obtain a default judgment, the First Amended Complaint "need not allege facts sufficient to make out a classic . . . prima facie case." *See Surtain*, 789 F.3d at 1246. Rather, the First Amended Complaint must only contain "well-pleaded factual allegations" that "plausibly suggest [Plaintiff] suffered an adverse employment action due to" pregnancy discrimination. *See id.*; *see also Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017) ("A Title VII complaint need not allege facts sufficient to make out a classic prima facie case, but must simply provide enough factual matter to plausibly suggest intentional discrimination.").

In her First Amended Complaint, Plaintiff alleges that she was pregnant at the time of the events described therein. *See* DE 11 ¶ 1. Plaintiff also alleges that Defendant Hussein, the owner of Defendant T-Shirt Station and her supervisor, asked her if she was pregnant, said it would be a "big deal" if she was, and then fired her immediately after asking whether she was pregnant. *Id.* ¶¶ 9, 10–12. These allegations are sufficient to plausibly suggest intentional pregnancy discrimination. *Cf. Stephens v. Adler Soc., LLC*, No. 20-62242-CIV, 2021 WL 5084236, at *4 (S.D. Fla. Mar. 12, 2021) ("The Complaint contains enough factual allegations to plausibly suggest intentional discrimination. Plaintiff's supervisor's statements that the owners would not like that she is pregnant, the proximity of the Defendant's actions and Plaintiff's termination to her disclosure of pregnancy, and the change in Plaintiff's treatment immediately following the disclosure of her pregnancy all strongly suggest intentional discrimination."). Accordingly, the Court finds that Plaintiff has established Defendant T-Shirt Station's liability for pregnancy discrimination under the PDA and Title VII.

### B. Pregnancy Discrimination Under the FCRA

As the Eleventh Circuit has acknowledged, if "there were a cause of action for pregnancy discrimination under the [FRCA], it would be construed in the same manner as a cause of action

4

for pregnancy discrimination under Title VII of the Civil Rights Act of 1964." *DuChateau v. Camp, Dresser & McKee, Inc.*, 713 F.3d 1298, 1302 (11th Cir. 2013). At the time the Eleventh Circuit made this acknowledgement, it was "an open question whether the FCRA, like Title VII, recognizes claims of pregnancy discrimination." *Hubbard*, 520 F. App'x at 862 n.3. However, the Florida Supreme Court has since clarified that the FRCA, like Title VII after the PDA, recognizes pregnancy discrimination as a form of prohibited sex discrimination. *See Delva v. Cont'l Grp. Inc.*, 137 So. 3d 371, 376 (Fla. 2014) ("[A] liberal construction of the FCRA to effectuate its purposes, as specifically provided for in the statute itself, makes clear that discrimination based on pregnancy, a natural condition unique to females and a primary characteristic of the female sex, is subsumed within the prohibition in the FCRA against sex discrimination in employment practices."); *see also Diaz v. Florida*, 219 F. Supp. 3d 1207, 1214 (S.D. Fla. 2016) ("Florida's equivalent, the FCRA, contains an identical prohibition on sex, pregnancy, and race discrimination."). Accordingly, since Plaintiff has established Defendant T-Shirt Station's liability for pregnancy discrimination under the PDA and Title VII, Plaintiff has likewise established Defendant T-Shirt Station's liability for pregnancy discrimination under the FCRA.

### C. FLSA Claim for Unpaid Minimum and Overtime Wages

To establish a claim for unpaid minimum and overtime wages under the FLSA, Plaintiff must demonstrate that: (1) Defendant T-Shirt Station employed her, (2) either she was engaged in interstate commerce or Defendant T-Shirt Station was an enterprise engaged in interstate commerce, and (3) she was not paid minimum and overtime wages. *See, e.g.*, *Moore v. King Game, Inc.*, No. 19-21391-CIV, 2021 WL 4295400, at *2 (S.D. Fla. Feb. 24, 2021), *report and recommendation adopted*, No. 19-21391-CIV, 2021 WL 4290870 (S.D. Fla. Sept. 21, 2021); *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 682 (M.D. Fla. 2008); *Harding-bey v. Pathways Therapy Servs., LLC*, No. 6:20-CV-1110-ACC-LRH, 2021 WL 1894603, at *3 (M.D. Fla. Apr.

5

20, 2021), *report and recommendation adopted*, No. 6:20-CV-1110-ACC-LRH, 2021 WL 1893968 (M.D. Fla. May 11, 2021). The First Amended Complaint only meets these requirements as to Plaintiff's claim for unpaid overtime wages.

By its default, Defendant T-Shirt Station has admitted the following well-pled allegations in the First Amended Complaint. First, Plaintiff alleges that Defendant T-Shirt Station was her employer. DE 11 ¶ 8. Second, Plaintiff avers that enterprise coverage exists on account of Defendant T-Shirt Station having over $500,000 in annual gross sales and employees who regularly handle goods and materials that have been sold or transported across state lines and use telephones to conduct business over state lines.[3] *Id.* ¶ 33; s*ee Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) ("An employer falls under the enterprise coverage section of the FLSA if it 1) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and 2) has at least $500,000 of annual gross volume of sales made or business done." (quotation marks omitted)); *see, e.g.*, *Certain v. Van Horst Gen. Contractors, LLC*, No. 20-60395-CIV, 2020 WL 10618316, at *2 (S.D. Fla. Apr. 10, 2020) ("Plaintiffs' allegation that Defendant had two (2) or more employees handling or otherwise working with telephones, computers and other office supplies and materials that had been moved in commerce, which were used directly in furtherance of Defendant's commercial

---

[3] Although Plaintiff only alleges, upon information and belief, that Defendant T-Shirt Station generated over $500,000 in gross revenue annually, such an allegation is sufficient to survive a motion to dismiss. *See, e.g.*, *Williams v. Core Energy Inc.*, No. 1:22-21570-Civ, 2023 WL 5677543, at *4 (S.D. Fla. Aug. 3, 2023) ("To meet the second element, a plaintiff may simply allege that on 'information and belief' the enterprise has an annual gross revenue of at least $500,000."), *report & recommendation adopted*, 2023 WL 5676896 (S.D. Fla. Sept. 4, 2023); *Roberts v. Caballero & Castellanos, PL*, No. 09-23131-CIV, 2010 WL 114001, at *3 (S.D. Fla. Jan. 11, 2010) (finding information and belief allegation about gross revenue of defendants sufficient for plaintiff to demonstrate enterprise coverage and noting that the issue of defendants' gross sales "are issues more appropriately determined at the summary judgment stage"); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) ("The Court also rejects Defendants' call for more particular allegations as to the $500,000 gross annual revenue requirement for enterprise coverage. . . . Plainly, [plaintiff] need not know for certain, nor prove, that [defendant] has annual gross revenues exceeding $500,000 at the pleading stage, especially since that information is likely in Defendants' hands, not his.").

activity of construction is adequate at the pleading stage for the first prong of enterprise coverage." (citation omitted)); *Sims v. UNATION, LLC*, 292 F. Supp. 3d 1286, 1293 (M.D. Fla. 2018) (concluding that plaintiff's enterprise coverage claim—which alleged that defendant's employees used tools and equipment including computers, pens, and paper that were moved in or produced for commerce—was sufficient to survive a motion to dismiss). Lastly, Plaintiff asserts that Defendant T-Shirt Station failed to pay her the minimum and overtime wages the FLSA mandates. DE 11 ¶¶ 19–21.

However, Plaintiff alleges that Defendant T-Shirt Station paid her at an hourly rate of $9 per hour, *id.* ¶ 16, and the federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C) (establishing $7.25 as the federal minimum wage). Accordingly, the Court finds that Plaintiff has established Defendant T-Shirt Station's liability only for the unpaid overtime wage violation that she pleads under the FLSA.

### D. FMWA Claim for Unpaid Minimum Wages

"To prevail on a claim brought under the FMWA, a plaintiff must establish the same three elements needed to prevail under the FLSA . . . ." *Chavez v. Grill Enters.*, No. 20-22603-CIV, 2022 WL 1642757, at *9 (S.D. Fla. Jan. 31, 2022); *see also Li v. Roger Holler Chevrolet Co.*, No. 6:19-CV-1249-GAP-EJK, 2021 WL 4935673, at *2 (M.D. Fla. May 5, 2021) ("To prevail under the FMWA, a plaintiff must establish the same three elements needed to prevail under the FLSA . . . ."); § 448.110(3), Fla. Stat. ("Only those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act, as amended, and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section."). Additionally, the FMWA includes a presuit notice requirement. *See* § 448.110(6)(a), Fla. Stat. ("[P]rior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section,

7

in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice."). And this presuit notice is a condition precedent for a prospective FMWA plaintiff. *See id.* § 448.110(6)(b) ("If the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice.").

As set forth above, Plaintiff sufficiently pleads all necessary elements to state a claim under the FLSA but for the element that she was not paid the federal minimum wage, given that her hourly rate of $9 per hour surpassed the federal minimum wage of $7.25 per hour. Nevertheless, the Florida minimum wage during Plaintiff's employment at Defendant T-Shirt Station was $11 per hour. *See* Art. 10, § 24(c), Fla. Const. (establishing $11 minimum wage in Florida for September 30, 2022, to September 30, 2023); DE 11 ¶¶ 8–9 (claiming Defendant T-Shirt Station employed Plaintiff from November 15, 2022, to January 12, 2023). Thus, Plaintiff sufficiently pleads that she was not paid the minimum wage under the FMWA. Moreover, the First Amended Complaint generally alleges that "all conditions precedent . . . have been met." DE 11 ¶ 14. Although this allegation is only pled generally, it is sufficient to satisfy Federal Rule of Civil Procedure 9(c). Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."); *see also Myers v. Central Fla. Invests., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010). As such, the Court finds that Plaintiff has sufficiently pled that she complied with the FMWA's presuit notice requirement. For these reasons, the Court finds that Plaintiff has established Defendant T-Shirt Station's liability for the unpaid minimum wage violation that she pleads under the FMWA.

### III. Damages

Plaintiff claims a total of $150,590 in damages, and she breaks down these damages as follows: (1) $180 in unpaid overtime wages, (2) $640 in unpaid minimum wages, (3) $820 in liquidated damages, (4) $48,950 in back wages, and (5) $100,000 in compensatory damages. DE 44 at 4–5. "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Atl. Corp. of Wilmington, Inc. v. TBG Tech Co. LLC*, No. 21-24317-CIV, 2022 WL 18495887, at *5 (S.D. Fla. Feb. 18, 2022) (quotation marks omitted). In making a damages determination, a court need not hold an evidentiary hearing to ascertain damages when all of the essential evidence is already in the record. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.12 (11th Cir. 2005). "In other words, a court may award damages as long as the record contains evidence allowing the court to ascertain damages from mathematical calculations and detailed affidavits." *Haliburton v. MGMerk Stocking Inc.*, No. 2:19-CV-14261-KMM, 2020 WL 13369448, at *2 (S.D. Fla. Apr. 1, 2020) (quotation marks omitted). The Court finds that the record contains all of the essential evidence to allow the Court to ascertain Plaintiff's damages, and the Court addresses each category of Plaintiff's damages in turn.

### A. Unpaid Overtime Wages

To support her claim for $180 in unpaid overtime wages, Plaintiff avers that she worked 43 hours per week for 8 weeks and was not paid an overtime rate of one and a half her normal hourly wage for the 3 hours of overtime she worked each week. DE 46-1 ¶¶ 7, 9. Therefore, Plaintiff calculates her unpaid overtime wages as follows: her overtime rate of $16.50 ($11 Florida minimum wage x 1.5 overtime rate = $16.50) – her paid hourly rate of $9 = $7.50 unpaid overtime rate x 3 hours per week x 8 weeks = $180 in unpaid overtime wages. Plaintiff's calculation is accurate.

During Plaintiff's period of employment, Florida's minimum wage was $11 per hour. *See* Art. 10, § 24(c), Fla. Const. (establishing $11 minimum wage in Florida for September 30, 2022, to September 30, 2023). And, under the FLSA, Plaintiff can calculate her unpaid overtime wages utilizing the Florida minimum wage. *See* 29 C.F.R. § 778.5 (stating that, for the purpose of calculating overtime compensation under the FLSA, an employee's regular rate "cannot be lower than such applicable [state] minimum, for the words 'regular rate at which he is employed' as used in [the FLSA] must be construed to mean the regular rate at which he is lawfully employed"). Accordingly, the Court recommends awarding Plaintiff $180 in unpaid overtime wages under the FLSA.

### B. Unpaid Minimum Wages

To support her claim for $640 in unpaid minimum wages, Plaintiff avers that she was only paid $9 per hour when Florida's minimum wage was $11 per hour. DE 46-1 ¶ 7. As such, Plaintiff calculates her unpaid minimum wages as follows: $11 (Florida's minimum wage) – $9 (her paid hourly rate) = $2 unpaid minimum wage per hour x 40 hours per week x 8 weeks = $640 in unpaid minimum wages. *Id.* ¶ 8. The Court finds this calculation to be accurate and recommends awarding Plaintiff $640 in unpaid minimum wages under the FMWA.

### C. Liquidated Damages

Because Defendant T-Shirt Station has defaulted and failed to demonstrate why liquidated damages are not warranted in this case, Plaintiff is entitled to liquidated damages under the FLSA. *See Haliburton v. MGMerk Stocking Inc.*, No. 2:19- CV-14261-KMM, 2020 WL 13369448, at *2 (S.D. Fla. Apr. 1, 2020) (awarding plaintiff liquidated damages on default judgment for FLSA claim where defaulting defendants failed to meet their burden of demonstrating that liquidated damages were not warranted); *Pena v. Best Wholesale Grocers, LLC*, No. 23-CV-61116-RAR, 2023 WL 5095492, at *2 (S.D. Fla. Aug. 9, 2023) (explaining that a plaintiff is entitled to

liquidated damages when a defaulting employer fails to meet its burden of demonstrating that liquidated damages are not warranted). Additionally, because Plaintiff is the prevailing party in this litigation, she is also entitled to liquidated damages under the FMWA. § 448.110(6)(c)(1), Fla. Stat. ("Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages . . . ."). Accordingly, the Court recommends awarding Plaintiff $820 in liquidated damages to match the Court's recommended award of $180 in unpaid overtime wages and $640 in unpaid minimum wages ($180 +$640 = $820). *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) ("Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages.").

### D. Back Pay

"[V]ictorious Title VII plaintiffs are presumptively entitled to back pay." *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1472 (11th Cir. 1985). "Back pay is the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) (quotation marks omitted). "Unrealistic exactitude is not required as the back-pay calculation may be based on just and reasonable inference of the missing or imprecise figure." *Id.* (alteration and quotation marks omitted). Back pay, if awarded, is calculated up to the day judgment is entered. *Nord*, 758 F.2d at 1472–73 ("Here, the court granted back pay but ended the back pay period on the date of the court's oral findings, over four months before judgment was entered. This was contrary to the 'make whole' purpose of Title VII, and therefore constitutes error." (citation omitted)).

Here, Plaintiff avers that she has been unable to find employment after Defendant T-Shirt Station wrongfully terminated her employment and that it has been 100 weeks since the

termination of her employment. DE 46-1 ¶ 10. Plaintiff's last day of employment at Defendant T-Shirt Station was January 12, 2023, and, at the time Plaintiff executed her affidavit on December 10, 2024, 698 days, or 99 weeks and 5 days, had passed.[4] Therefore, the 100 weeks for which Plaintiff requests back pay is accurate. Plaintiff also calculates the wages she should have earned but for the discrimination as $489.50 per week. *Id.* ¶ 11. Accordingly, the Court recommends awarding Plaintiff $48,950 in back pay ($489.50 per week x 100 weeks = $48,950).

### E. Emotional Damages

"Once a defendant is found liable for the plaintiff's injury, the District Court has a great deal of discretion in deciding" the amount of compensatory damages in a Title VII case. *Akouri*, 408 F.3d at 1344–45. "As a general rule, general compensatory damages . . . need not be proven with a high degree of specificity." *Id.* at 1345. "Compensatory damages may be inferred from the circumstances as well as proved by the testimony," and a "plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms." *Id.* (quotation marks omitted). Although "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress," "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Id.* (quotation marks omitted). "[N]either conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages." *Id.* (quotation marks omitted).

In her affidavit, Plaintiff avers that she suffered emotional distress as a result of the termination of her employment. DE 46-1 ¶ 12. Specifically, Plaintiff claims that she became

---

[4] "Title VII requires plaintiffs to mitigate their damages through reasonably diligent efforts to seek employment that is substantially equivalent." *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999). However, the "burden of proving lack of diligence is on the employer." *EEOC v. Massey Yardely Chrysler Plymouth*, 117 F.3d 1244, 1251–52 (11th Cir. 1997). Therefore, by its default, Defendant T-Shirt Station has failed to meet its burden to demonstrate that Plaintiff has failed to mitigate her back pay damages.

depressed after Defendant T-Shirt Station terminated her employment and developed a fear that her depression could affect her unborn child at the time. *Id.* The Court finds this testimony sufficient to support an award of compensatory damages for emotional distress.

Plaintiff seeks $100,000 in emotional distress damages, *id.* ¶ 13, and this Court has previously determined that $100,000 is "within the range of damages awarded for emotional distress in Title VII cases in this District." *See Garcia v. Unit Dose Servs., LLC*, No. 0:23-CV-61352, 2023 WL 6962827, at *4 (S.D. Fla. Oct. 2, 2023) (collecting cases), *report and recommendation adopted*, No. 23-61352-CV, 2023 WL 6958658 (S.D. Fla. Oct. 20, 2023). Accordingly, the Court recommends awarding Plaintiff $100,000 in emotional distress damages.[5]

### IV. Recommendation

Based on the foregoing, the Court **RECOMMENDS GRANTING** Plaintiff's Motion for Default Final Judgment [DE 44]. Specifically, the Court **RECOMMENDS GRANTING** default judgment on Counts I, II, III, and VI (erroneously titled "Count II") of the First Amended Complaint and awarding Plaintiff $150,590 in damages ($180 unpaid overtime wages + $640 unpaid minimum wages + $820 liquidated damages + $48,950 back wages + $100,000 emotional distress damages = $150,590).

If Plaintiff's Motion for Default Judgment is granted, only one count of Plaintiff's First Amended Complaint would remain: Count V (erroneously titled "Count III"). As previously stated, Plaintiff did not move for default judgment on that count in her Motion. *See* DE 44. But Judge Leibowitz's Order on Default Procedures specifically required her to move for default

---

[5] Compensatory damages under Title VII are capped based on the employer's number of employees, *see* 42 U.S.C. § 1981a(b)(3), and the record is unclear as to how many employees Defendant T-Shirt Station employs. However, the FCRA also provides for compensatory damages and does not cap compensatory damage awards. *See* § 760.11(5), Fla. Stat. Thus, if Title VII were to impose a cap lower than $100,000 on Plaintiff's compensatory damages, Plaintiff could recover the remainder under the FRCA. *See Bradshaw v. Sch. Bd. of Broward Cnty.*, 486 F.3d 1205, 1207–08 (11th Cir. 2007) ("[I]f Title VII cannot remedy the full extent of her injury because of its damage cap, then the remaining portion of [plaintiff's] injury should be remedied as much as possible under the [FCRA], and vice versa." (emphasis omitted)). As such, the Court need not determine Defendant T-Shirt Station's number of employees.

judgment by a date certain and warned her that failure to do so could result in a dismissal for failure to prosecute. *See* DE 43 (ordering Plaintiff to "move for default judgment **no later than December 10, 2024,** or the Court may dismiss the claims for failure to prosecute"). Accordingly, the Court further **RECOMMENDS DISMISSING** Count V (FLSA Retaliation) of the First Amended Complaint for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action *or any claim against it.*" (emphasis added)); *Brown v. Tallahassee Police Dep't*, 205 F. App'x 802, 802 (11th Cir. 2006) ("The court may dismiss an action *sua sponte* under Rule 41(b) for failure to prosecute or failure to obey a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 5th day of May, 2025.

                                              PANAYOTTA AUGUSTIN-BIRCH
                                              UNITED STATES MAGISTRATE JUDGE